**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MARY E. BAILEY,**

                            **Plaintiff,**

                v.                                        1:20-CV-155
                                                               (FJS/CFH)

**NEW YORK STATE DEPARTMENT**
**OF CORRECTIONS AND**
**COMMUNITY SUPERVISION,**

                            **Defendant.**

---

**APPEARANCES**                                    **OF COUNSEL**

**SUSSMAN & ASSOCIATES**                  **JONATHAN R. GOLDMAN, ESQ.**
1 Railroad Avenue – Suite 3
P.O. Box 1005
Goshen, New York 10924
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**            **AMANDA K. KURYLUK, AAG**
**STATE ATTORNEY GENERAL**         **ALEXANDER POWHIDA, AAG**
The Capitol                                         **KASEY K. HILDONEN, AAG**
Albany, New York 12224                     **RYAN W. HICKEY, AAG**
Attorneys for Defendant

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Plaintiff's motion, brought pursuant to Rule 54 of the Federal Rules of Civil Procedure and 42 U.S.C. §§ 2000e-5(g) and (k), for an order awarding her the following: (1) backpay, inclusive of pre-judgment interest, (2) front pay, (3) costs and reasonable attorney's fees, (4) an amendment to the judgment to include each of those economic

awards, and (5) any additional relief that Court deems just, proper, and equitable under the circumstances.  *See* Dkt. No. 82.

## II. BACKGROUND

Plaintiff Mary Bailey, a former Deputy Superintendent of Programs ("DSP") at Washington Correctional Facility, commenced this action against Defendant New York State Department of Corrections and Community Supervisions ("Defendant" or "DOCCS") in February 2020, alleging one cause of action for retaliation pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.  See* Dkt. No. 1, Compl., at ¶¶ 67-72.  Plaintiff's allegations arose from her demotion, in November 2017, to Supervising Offender Rehabilitation Coordinator ("SORC") at Wallkill Correctional Facility, which Defendant argued resulted from her disclosure of confidential information about an internal complaint to the subject of that complaint and the subject's union representative.  *See* Dkt. No. 41 at 4.  Plaintiff alleged that Defendant's reason was pretextual, and she was actually demoted because of her protected activities in complaining about her former supervisor's sexual harassment toward her and in commencing a lawsuit against him.  *See id.* at 4-5.  Defendant moved for summary judgment, *see* Dkt. No. 36, which the Court denied in its entirety, *see* Dkt. No. 41.

This matter then proceeded to a jury trial beginning on July 31, 2023.  On the fourth day of trial, August 3, 2023, the jury returned a verdict finding in favor of Plaintiff for her single Title VII retaliation claim.  *See* Dkt. No. 73.  Having found Defendant liable, the jury next responded to the question on the verdict sheet about compensatory damages, and it awarded Plaintiff $1.00 representing nominal damages.  *See id.*  At the Court's specific instruction, the jury did not consider economic damages, which the parties agreed to leave to the Court's

discretion if the jury found in Plaintiff's favor on liability.  *See* Dkt. No. 72 at 13.  Thus, pending before the Court is Plaintiff's motion for economic damages, including backpay and front pay, and for attorney's fees and costs, brought pursuant to Rule 54 of the Federal Rules of Civil Procedure and 42 U.S.C. §§ 2000e-5(g) and (k).  *See* Dkt. No. 82.  Defendant opposes that motion.[1]  *See* Dkt. No. 83.

### III. DISCUSSION

**A.  Whether Plaintiff is entitled to backpay and prejudgment interest**

"Title VII authorizes front pay and back pay as potential remedies for unlawful employment practices."  *Pace v. Town & Country Veterinary Clinic P.C.*, No. 3:20-cv-279 (GLS/ML), 2022 U.S. Dist. LEXIS 135779, *14 (N.D.N.Y. Aug. 1, 2022) (Sharpe, S.J.) (citing 42 U.S.C. § 2000e-5(g)(1); *see also Noel v. N.Y. State Office of Mental Health Cent. N.Y. Psychiatric Ctr.*, 697 F.3d 209, 213 (2d Cir. 2012)).  "An award of back pay . . . should ordinarily consist of lost salary, including anticipated raises, and fringe benefits."  *EEOC v. Joint Apprenticeship Comm.*, 186 F.3d 110, 124 (2d Cir. 1998) (citing *Saulpaugh* [*v. Monroe Cmty. Hosp.*], 4 F.3d [134,] 145 [(2d Cir. 1993)]; *Sands* [*v. Runyon*], 28 F.3d [1323,] 1328 [(2d Cir. 1994)]) (parenthetical omitted).  A plaintiff who successfully claims retaliation under Title VII "would ordinarily be entitled to an award of back pay from the date of [the retaliation] until the date of judgment."  *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 144 (2d Cir. 1993) (citing *Dunlap-McCuller v. The Riese Organization*, 980 F.2d 153, 159 (2d Cir. 1992)).  "The

---

[1] Defendant did not file any posttrial motions pursuant to Rules 50(b) or 59 of the Federal Rules of Civil Procedure despite indicating its intention to do so to the Court in person and in prior filings.

backpay period ends prior to judgment, however, if the plaintiff has theretofore retired, for 'a discriminatee is not entitled to back pay to the extent that he fails to remain in the labor market[.]'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 168 (2d Cir. 1998) (quoting *NLRB v. Mastro Plastics Corp.*, 354 F.2d 170, 174 n.3 (2d Cir. 1965) (discussing backpay entitlement under National Labor Relations Act), *cert. denied*, 384 U.S. 972, 16 L. Ed. 2d 682, 86 S. Ct. 1862 (1966)).

"An employer seeking to avoid an award of front or back pay bears the burden of demonstrating that a plaintiff failed to mitigate her damages." *Pace*, 2022 U.S. Dist. LEXIS 135779 at *15 (citing *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997); *see also Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 93 (E.D.N.Y. 2020) ("Under Title VII, a prevailing plaintiff forfeits her right to back or front pay if she fails to mitigate damages.")). "The Supreme Court has explained, however, that [the plaintiff's] obligation has limits: to satisfy the duty to mitigate, 'the unemployed . . . need not go into another line of work, accept a demotion, or take a demeaning position.'" *Dailey v. Societe Generale*, 108 F.3d 451, 456 (2d Cir. 1997) (quoting [*Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982)]); *accord Bergerson v. N.Y.S. Off. of Mental Health*, 526 F. App'x 109, 111 (2d Cir. 2013).  Notably, "[f]ailure to mitigate damages is an affirmative defense and therefore must be pleaded." *Travellers Int'l, A.G. v. Trans World Airlines*, 41 F.3d 1570, 1580 (2d Cir. 1994) (citing Fed. R. Civ. P. 8(c)). "The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver." *Id.* (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 n.2 (2d Cir. 1988)) (other citation omitted).

In addition to the above-described framework, Defendant points to *Tse v. UBS Fin. Servs.*, to argue that the so-called "constructive discharge rule" applies in this case.  *See* Dkt.

- 4 -

No. 83 at 9-10 (citing *Tse v. UBS Fin. Servs.*, 568 F. Supp. 2d 274 (S.D.N.Y. 2008)). Defendant argues that, under the constructive discharge rule, a plaintiff who voluntarily resigns from her position and has not pled a constructive discharge claim has failed as a matter of law to mitigate damages with respect to post-resignation backpay and may not recover any backpay at all. *See id.* Defendant contends that, because Plaintiff resigned and retired rather than take the demotion to the SORC position and failed to plead a separate cause of action for constructive discharge in her complaint, she is not entitled to economic damages, including backpay. *See id.*

As Plaintiff correctly notes, however, "the Second Circuit Court of Appeals has not addressed whether post-resignation backpay is available for a plaintiff who has not been constructively discharged." *EEOC v. Bloomberg L.P.*, 29 F. Supp. 3d 334, 341 (S.D.N.Y. 2014) (citing [*Tse*, 568 F. Supp. at 300]).[2] As the court noted in *Bloomberg L.P.*, "[a]lthough *Tse* acknowledged that under 'the strong version of the "constructive discharge" rule[,]' which certain courts have adopted, a 'plaintiff would simply be barred as a matter of law from recovering post-employment damages,' the *Tse* court did not expressly adopt this position itself." *Id.* (quoting *Tse*, 568 F. Supp. 2d at 302). "Instead, *Tse* recognized that 'the fact-specific nature of back pay determinations' may justify certain 'exceptions and distinctions' [that] are consistent with 'the general, well-established principle that an employee may not receive backpay damages where she could have mitigated her economic harm.'" *Id.* (quoting [*Tse*, 568 F. Supp. 2d at 302]). The court further expressed that, "[i]n the absence of controlling precedent from the Court of Appeals, there is no reason to adopt [the defendant's] proposed rule

---

[2] Notably, Defendant also quotes and cites to *EEOC v. Bloomberg L.P.* in its memorandum of law, but it does so in a way that misconstrues its holding and erroneously contends that it supports the court's opinion in *Tse*. *See* Dkt. No. 83 at 10.

categorically barring post-resignation backpay in the absence of a constructive discharge." *Id.* The court in *Bloomberg L.P.* therefore concluded that "a plaintiff's duty to mitigate, considered on a case-by-case basis, adequately guards against unmerited backpay awards." *Id.* (citing *Albemarle Paper co. v. Moody*, 422 U.S. 405, 421-22, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975) ("[G]iven a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.")).

As the court in *Bloomberg L.P.* noted, the Second Circuit has not adopted the constructive discharge rule, nor have other courts within this Circuit – including the court in *Tse*. Relying on the court's reasoning in *Bloomberg L.P.*, this Court also declines to adopt the constructive discharge rule as Defendant suggests and will instead consider the specific facts of this case to determine if Plaintiff mitigated her damages.  Furthermore, based on the jury's finding of retaliation in this case, the Court finds that Plaintiff is entitled to backpay from the date of her retaliation through the date she has shown she would have remained in the labor market, unless Defendant has shown that she has failed to mitigate her damages.

With respect to the date of her retaliation, Plaintiff has attached Defendant's letter, dated November 8, 2017, to her memorandum of law in support of the pending motion, in which Defendant informed Plaintiff that it would terminate her position as a DSP effective close of business that day, and she would be demoted to a SORC position at Wallkill Correctional Facility the next day, November 9, 2017.  *See* Dkt. No. 82-5 at 2.  Based on this evidence, the Court finds that Plaintiff is entitled to backpay beginning on November 8, 2017, the date of the retaliation.

As to the date through which Plaintiff would have remained in the labor market, Defendant argues that Plaintiff's pleadings and deposition testimony reveal that she would have retired at age 62.  *See* Dkt. No. 83 at 16.  Plaintiff alleged in her complaint that her "demotion occurred approximately nine months before [she] was to reach thirty years of service (including prior County employment) and eligibility to earn her full retirement benefits."  *See* Dkt. No. 1 at ¶ 55.  She further alleged in her complaint that, "[a]s a result of [her] demotion, [P]laintiff, who had planned to work for at least an additional two more years, decided to retire early[.]"  *See id.* at ¶ 56.  Plaintiff, who was 66 years old at the time of trial, testified that Defendant did not give her an opportunity to retire from her DSP title when it demoted her to the SORC position; and, instead of reporting to the SORC position, she went to New York State's "retirement office" and learned that she was eight months shy of having 30 years in that retirement system.  *See* Dkt. No. 83-3 at 3:23-24, 34:1-12.

In opposition to Plaintiff's motion, Defendant attached a transcript from Plaintiff's deposition before trial, in which she stated that she had not planned her early retirement and "would have worked until June of when [she] turned sixty-two, at the minimum, because that would [have been her] sixty-second birthday."  *See* Dkt. No. 83-2 at 112:3-8.  However, Plaintiff noted that she "would have possibly wanted to work longer," but she did not know for sure.  *See id.* at 112:8-9.  Plaintiff attested that she was 60 years old on November 8, 2017, when she retired, but "from the information [she] was given, [she] was somewhere around eight months short of having thirty years in the retirement system."  *See id.* at 112:17-25.  Considering this evidence, the Court finds that Plaintiff has shown by a preponderance of the credible evidence that she would have worked until her 62nd birthday, when she was eligible to receive both her full pension and Social Security benefits, but not that she would have stayed in

the workforce in her DSP position past that date.  Accordingly, the Court finds that Plaintiff is entitled to an award of backpay from November 8, 2017 until June 9, 2019, unless Defendant shows she has failed to mitigate her damages.

Plaintiff argues that Defendant waived the affirmative defense of mitigation by failing to raise it in its Answer.  *See* Dkt. No. 82-1 at 11-12.  Defendant concedes such failure but argues that there was no reason to assert a failure to mitigate defense because Plaintiff did not plead that she was constructively discharged.  *See* Dkt. No. 83 at 13.  Nonetheless, Defendant asks the Court to grant it leave to amend its answer to plead a defense of failure to mitigate pursuant to Rule 15(b)(1) of the Federal Rules of Civil Procedure.  *See id.*

As Defendant admits, it did not raise the affirmative defense of mitigation in its Answer. *See generally* Dkt. No. 7 at 7.  Even without pleading a cause of action for constructive discharge, Plaintiff pled a claim for Title VII retaliation and sought economic damages, including backpay and front pay.  *See generally* Dkt. No. 1.  Plaintiff's allegations and prayer for relief notified Defendant that she would seek backpay, which would be impacted by Plaintiff's efforts, if any, to mitigate her damages.  Since Defendant did not assert mitigation as an affirmative defense in its Answer, the Court finds that it has waived that defense.

Defendant could have amended its Answer within 21 days after serving it or could have appropriately sought leave from the Court to do so at another time leading up to trial.  *See* Fed. R. Civ. P. 15(a)(1)(A), (2).  Even if, as Defendant suggests, it was not obligated to raise that defense initially, Defendant certainly had notice of Plaintiff's intent to seek economic damages, including backpay, as a result of the alleged retaliation when the parties discussed it with the Court at the Final Pretrial Conference and when Plaintiff objected to questions about mitigation during the trial.  As Plaintiff notes, in a Text Minute Entry issued after the Final Pretrial

Conference, the Court ruled that "Plaintiff may assert that she was forced to quit as an example of an adverse action that would support her retaliation claim." *See* Text Minute Entry, July 25, 2023. Defendant could have objected at trial pursuant to Rule 15(b)(1) and sought to amend its Answer then. *See* Fed. R. Civ. P. 15(b)(1). Defendant did not do so. Instead, in post-trial briefing on the issue of economic damages, it informally requests leave to amend its Answer to include mitigation as an affirmative defense.

"Despite the liberality that is favored in considering motions to amend, they should be made no later than the time of pre-trial, absent compelling reasons for their omission." *Peele v. N.Y.C. Dep't of Social Servs.*, No. 92 Civ. 3765 (SWK), 1995 U.S. Dist. LEXIS 18226, *13 (S.D.N.Y. Dec. 7, 1995) (citing *Evans v. Syracuse City School Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (quoting *Nevels v. Ford Motor Co.*, 439 F.2d 251, 257 (5th Cir. 1971)); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 322, 28 L. Ed. 2d 77, 91 S. Ct. 795 (1971) (upheld trial court's denial of defendant's post trial motion to amend its answer); *Petramale v. Local Union 17 Laborers' Int'l Union of North America*, 625 F. Supp. 775, 785 [(S.D.N.Y. 1986)] (court denied plaintiff's motion to amend the complaint after trial and remand from the Second Circuit)). The Court finds that Defendant has not proffered compelling reasons to seek leave to amend its answer here, nor has it explained why it failed to do so earlier. As such, the Court holds that Plaintiff is entitled to backpay for the relevant period, discussed above, without considering whether she failed to mitigate her damages.[3]

Finally, when a plaintiff is entitled to a backpay award, "Title VII authorizes a district court to grant prejudgment interest" on it, and "'it is ordinarily an abuse of discretion *not* to

---

[3] Nonetheless, even if the Court were to consider mitigation, it notes that Plaintiff was not required to accept a demotion in order to mitigate her damages. *See Dailey*, 108 F.3d at 456.

include pre-judgment interest in a back-pay award.'" *Saulpaugh*, 4 F.3d at 145 (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153-54 (2d Cir. 1992)). "The court should apply 'the federal interest rate based on the average rate of return on one-year Treasury bills for the relevant time period between the time the claim arises until the entry of judgment pursuant to 28 U.S.C. § 1961(a).'" *EEOC v. United Health Programs of Am., Inc.*, 350 F. Supp. 3d 199, 230 (E.D.N.Y. 2018) (quoting *Levy v. Powell*, No. 00-cv-4499 (SJF), 2005 U.S. Dist. LEXIS 42180, 2005 WL 1719912, at *3 (E.D.N.Y. July 22, 2005)). Accordingly, the Court grants Plaintiff's request for pre-judgment interest on her backpay award, to be calculated in this manner.

### B. Whether Plaintiff is entitled to front pay

As discussed above, Title VII authorizes front pay as a potential remedy for unlawful employment practices. *See Pace*, 2022 U.S. Dist. LEXIS 135779, at *14. "Front pay constitutes 'money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.'" *Id.* at *14-*15 (quoting *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846, 121 S. Ct. 1946, 150 L. Ed. 2d 62 (2001)). As with an award of backpay, the employer seeking to avoid a front pay award "bears the burden of demonstrating that a plaintiff failed to mitigate her damages." *Id.* at *15 (citations omitted). "In 'deciding whether an award of front pay is appropriate, a court should consider (1) whether reinstatement [is] either impossible or impracticable[;] (2) whether the plaintiff has a reasonable prospect of obtaining comparable employment; and (3) whether the calculation of front pay would involve undue speculation.'" *EEOC v. AZ Metro Distribs., LLC*, No. 15-CV-05370 (ENV) (PK), 2020 U.S. Dist. LEXIS 237752, *22 (E.D.N.Y. Dec. 16, 2020) (quoting *Shannon v. Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, 233 (S.D.N.Y. 2001) (internal quotation

marks and citations omitted); *accord Press v. Concord Mortg. Corp.*, No. 08-CV-09497 (KTD), 2010 U.S. Dist. LEXIS 81952, 2010 WL 3199684, at *2 (S.D.N.Y. Aug. 11, 2010)).

With respect to the first factor, the Second Circuit recognizes that reinstatement is not always possible, particularly "where 'the employer-employee relationship may have been irreparably damaged by animosity associated with the litigation,' . . . and 'a reasonable monetary award of front pay is necessary as equitable relief . . . appropriate to effectuate the purposes of [Title VII.]'" *Padilla v. Metro-North Commuter R.R.*, 92 F.3d 117, 125 (2d Cir. 1996) (quoting *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir. 1984) (internal citations omitted)). In this case, the parties agree that reinstatement is not possible or practical following this litigation and Plaintiff's litigation against her former supervisor for sexual harassment. The parties additionally point to the executive nature of Plaintiff's position, the involvement of Defendant's highest-ranking officials, and the fact that Plaintiff has already retired and begun collecting her pension. For all of these reasons, the Court finds that reinstatement is not possible or practical in this case.

As to the second factor, "[e]mployment positions are 'comparable' where they are similar in promotional opportunities, compensation, job responsibilities, working conditions and status.'" *Saber v. N.Y.S. Dep't of Fin. Servs.,* No. 15 Civ. 5944 (LGS), 2018 U.S. Dist. LEXIS 126161, at *12 (S.D.N.Y. July 27, 2018) (citing *Greenway v. Buffalo Hilton Hotel*, 951 F. Supp. 1039 (W.D.N.Y. 1997); *see Palma v. Pharmedica Communs., Inc.*, No. 03 Civ. 1128, 2003 U.S. Dist. LEXIS 21227, 2003 WL 22750600, at *4 (D. Conn. Sept. 30, 2003)). Defendant argues that the record is devoid of any evidence regarding Plaintiff's reasonable prospects of finding comparable employment. *See* Dkt. No. 83 at 18. Plaintiff, who is 66 years old, has stated that it is "unlikely that she would be able to find comparable employment before she decides to stop

working completely." See Dkt. No. 82-1 at 20.  For support, Plaintiff points to *Saber*, in which the court found that a 65-year-old plaintiff was "unlikely to obtain a position with another employer [until his retirement] with a comparable level of responsibility and compensation," particularly given that "a new employer is unlikely to hire and train" a 65-year-old "given how close [he] is to retirement." *Saber*, 2018 U.S. Dist. LEXIS 126161, at*12.  Based on Plaintiff's age of 66 years old, her position as a high-ranking facility supervisor for the agency that manages nearly all correctional facilities in New York State, and her testimony that she was eight months away from receiving full retirement benefits at the time of the retaliation, the Court finds that it is unlikely that Plaintiff would obtain comparable employment at this time or in the future.

As to the third factor, "[t]he Second Circuit has observed that 'front pay awards always involve some degree of speculation,'" but the standard provides they must not be *unduly* speculative. *Chisolm v. Liberty Lines Transit, Inc.*, No. 08 Civ. 7894 (GAY), 2013 U.S. Dist. LEXIS 16254, *19 (S.D.N.Y. Feb. 6, 2013) (quoting *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1189 (2d Cir.), *cert. denied*, 506 U.S. 826, 113 S. Ct. 82, 121 L. Ed. 2d 46 (1992)).  Plaintiff contends in her memorandum of law supporting this motion that she would have continued working until age 70.  *See* Dkt. No. 82-1 at 19.  In response, Defendant argues that it would be unduly speculative for the Court to award any front pay based upon Plaintiff's claim that she would have continued to work until age 70.  *See* Dkt. No. 83 at 19.  As discussed with respect to her backpay award, the Court finds that Plaintiff has only established by a preponderance of the credible evidence that she would have continued working until her 62nd birthday – not after that date.  As Plaintiff's 62nd birthday fell on June 9, 2019, and she was 66

years old on the date the Court entered judgment in this matter on August 4, 2023, the Court finds that Plaintiff is not entitled to an award of front pay with respect to her lost salary.

Having made these findings, the Court must next address whether Plaintiff is entitled to the difference between her current pension benefit and her full pension benefit had she been able to retire at 62 years old. Plaintiff contends that she is entitled to that difference, which she believes would account for $4,000 per year until the end of her life expectancy, which the Social Security Administration estimates is 85 years old. *See* Dkt. No. 82-1 at 21 (citing https://www.ssa.gov/oact/STATS/table4c6.html). Defendant argues that Plaintiff should have offered expert testimony or subpoenaed witnesses from the retirement system to testify, and Plaintiff did not submit documentation from the retirement office to support her claim. *See* Dkt. No. 83 at 19-20.

Although Plaintiff did not submit any documentation from New York State's retirement office supporting her claim, she testified at trial that she met with a retirement officer and calculated that her pension, starting in November 2017, would have totaled approximately $4,000 less annually than she would have received had she not retired at that time and received her full pension after 30 years of service. *See* Dkt. No. 82-3 at 33:13-16; *see also* Dkt. No. 82-2 at 109:10-110:4. Defendant does not dispute that Plaintiff is competent to testify as to what she learned from the retirement office. Defendant also had the opportunity to cross-examine Plaintiff on the $4,000 figure at trial, at which time it asked Plaintiff whether her pension would have remained the same whether she retired in November 2017 or eight months later when she reached 30 years in the system because her top three highest paid years of work would not have changed. *See* Dkt. No. 82-3 at 63:2-66:5. During that cross-examination, Plaintiff maintained that – even though the pension amount is based on her three highest paid years of work, which

would not have changed even if she had taken the demotion – she did not have thirty years in the system until eight months after her demotion, and that subsequent eight months is what created the $4,000 differential in what she actually received from what she would have received had she not been forced to retire.  *See id.*

The enforcement provision of Title VII provides that, "'[i]f the court finds that the respondent has intentionally engaged in . . . an unlawful employment practice charged in the complaint, the court may . . . order such affirmative action as may be appropriate," including back pay, front pay, and "any other equitable relief as the court deems appropriate."  42 U.S.C. § 2000e-5(g)(1); *see Saber*, 2018 U.S. Dist. LEXIS 126161, at *11.  The Second Circuit has concluded that the purpose of economic damages pursuant to Title VII is to make a plaintiff "whole," as if the discrimination or retaliation never occurred.  *Saulpaugh*, 4 F.3d at 145.  Thus, in considering that the Court may order equitable relief to make Plaintiff whole, the Court finds that she is entitled to the $4,000 difference between her current pension and the full pension that she has established she would have received had Defendant not unlawfully retaliated against her, from her retirement date of June 9, 2019 – as the evidence shows and as discussed above – until she turns 85 years old, on June 9, 2042, which is the date of her calculated life expectancy according to the Social Security Administration's tables.  *See* https://www.ssa.gov/oact/STATS/table4c6.html (last accessed Nov. 28, 2023).

A sum of $4,000 per year from June 9, 2019 until the date of judgment would constitute backpay.  Notwithstanding this, Plaintiff was 66 years old on the date of judgment, which would allot her 19 years of front pay in the form of increased pension benefits – ending at age 85.  At $4,000 per year for 19 years, the total differential would be $76,000.  Plaintiff applies the following formula to calculate her front pay pension at the present value rate: Present Value

= Future Value * $1/(1+r)^n$, with "r" as the interest rate and "n" the number of time periods. *See* Dkt. No. 82-1 at 21. As stated above, courts in this Circuit have concluded that district courts should "apply 'the federal interest rate based on the average rate of return on one-year Treasury bills for the relevant time period between the time the claim arises until the entry of judgment pursuant to 28 U.S.C. § 1961(a).'" *United Health Programs*, 350 F. Supp. 3d at 230 (quoting *Levy v. Powell*, No. 00-cv-4499 (SJF), 2005 U.S. Dist. LEXIS 42180, 2005 WL 1719912, at *3 (E.D.N.Y. 2005)); *accord EEOC v. Stardust Diners, Inc.*, No. 21-CV-3122 (ENV) (LGD), 2023 U.S. Dist. LEXIS 140037, *29-*30 (E.D.N.Y. Aug. 10, 2023). Defendant does not dispute the accuracy of this formula. The Court therefore adopts this formula as set forth in Plaintiff's submissions and orders that Plaintiff is entitled to a future value rate of $76,000 reduced to the present value, as calculated pursuant to the above-stated formula,[4] plus the $4,000 pension differential in the form of backpay from June 9, 2019, until the date of judgment, August 4, 2023.

### C. Whether Plaintiff is entitled to reasonable attorney's fees

"'A court may award reasonable attorney fees to the "prevailing party" in a § 1983 action.'" *Moore v. Keller*, No. 5:16-CV-1230, 2021 U.S. Dist. LEXIS 225592, *3 (N.D.N.Y. Nov. 22, 2021) (Hurd, J.) (quoting *Brooks v. Roberts*, 501 F. Supp. 3d 103, 110 (N.D.N.Y. 2020) (citing 42 U.S.C. § 1988(b))). "'Determining whether an award of attorney's fees is appropriate requires a two-step inquiry.'" *Id.* at *3-*4 (quoting *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996)). The Court addresses each step in turn.

---

[4] In discounting the pension differential front pay to present value and using the annual average one-year treasury rate of 4.93% that Plaintiff provided in her submissions, the formula is PV = $76,000 * $1/(1.0493)^{19}$, which equals a present value of $30,459.33.

"First, the party must be a 'prevailing party' in order to recover." *Id.* at *4 (quoting *Brooks*, 501 F. Supp. 3d at 110). The Second Circuit has held that "[a] plaintiff who recovers only nominal damages is still a prevailing party and may be entitled to fees and costs in Title VII cases." *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 116 (2d Cir. 2015) (citing *Farrar v. Hobby*, 506 U.S. 103, 112-13, 113 S. Ct. 566, 121 L. Ed. 3d 494 (1992) ("[A] plaintiff who wins nominal damages is a prevailing party under § 1988 [which permits recovery of attorney's fees in civil rights cases]. . . . A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay."). Plaintiff commenced this action alleging one single claim against a sole defendant for retaliation in violation of Title VII, *see* Dkt. No. 1, and the jury found in favor of Plaintiff on that claim, *see* Dkt. No. 73. Notwithstanding that the jury only awarded Plaintiff nominal damages, the Court has found – as set forth above – that Plaintiff is entitled to economic damages; and, thus, the Court concludes that Plaintiff is a prevailing party entitled to fees and costs. *See id.*

"Second, 'the requested fee must also be reasonable.'" *Moore*, 2021 U.S. Dist. LEXIS 225592, at *4 (quoting *Pino*, 101 F.3d at 237). "'To determine a reasonable amount of attorneys' fees, courts use the lodestar method—the product of a reasonable hourly rate and the hours reasonably spent on the case.'" *Brooks v. Roberts*, 501 F. Supp. 3d 103, 111 (N.D.N.Y. 2020) (Hurd, J.) (quoting *United States ex rel. Rubar v. Hayner Hoyt Corp.*, 306 F. Supp. 3d 478, 488 (N.D.N.Y. 2018) (Sharpe, J.)) (parenthetical and other citation omitted). "Under the lodestar approach, the 'reasonable hourly rate' is determined by reference to 'what a reasonable, paying client would be willing to pay.'" *Id.* (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany ("Arbor Hill")*, 522 F.3d 182, 184 (2d Cir. 2008)).

First turning to the reasonable hourly rate, Plaintiff's counsel claims that he is entitled to an hourly rate of $315 based on his seven years of practice as an attorney, his status as a partner in his law firm, the complexity of this case, and his gained experience since Judge McAvoy awarded him an hourly rate of $170 in 2017. *See* Dkt. No. 82-1 at 26. Alternatively, Plaintiff's counsel argues, without citation to caselaw, that if he is awarded at this District's previously described reasonable rate based solely on his years of experience – which he asserts would be $200 per hour – that the Court should adjust that rate for inflation, making it $260 per hour. *See* Dkt. No. 83 at 24-25. The Court declines to set Plaintiff's counsel's award based on inflation "and elects instead to survey rates granted in this district's recent cases." *Johnson v. Mauro*, No. 5:16-cv-00622 (BKS/ML), 2019 U.S. Dist. LEXIS 193661, *4 n.2 (N.D.N.Y. Nov. 7, 2019) (Sannes, J.)

As Defendant correctly notes, cases in this District have found rates of $200 per hour reasonable for an attorney with between five and ten years' experience. *See, e.g.*, *Moore*, 2021 U.S. Dist. LEXIS 225592, at *8; *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 28 (N.D.N.Y. 2015) (D'Agostino, J.). Courts within this District have also found rates of $250 per hour appropriate for a senior associate's work, and $165 to $200 per hour reasonable for junior associates. *See, e.g.*, *Muldowney v. Simon's Agency*, Nos. 5:19-cv-531 (GLS/TWD); 5:19-cv-533 (GLS/TWD), 2021 U.S. Dist. LEXIS 249098, *4 (N.D.N.Y. Apr. 1, 2021) (Sharpe, S.J.); *Johnson*, 2019 U.S. Dist. LEXIS 193661, at *13-*14. Additionally, courts in this District regularly find rates from $250 to $350 reasonable for partners. *See, e.g.*, *Sadowski v. Urbanspotlite LLC*, No. 1:22-cv-00887 (BKS/DJS), 2023 U.S. Dist. LEXIS 61259, *15 (N.D.N.Y. Apr. 7, 2023) (Sannes, C.J.); *Oriska Corp. v. Highgate LTC Mgmt., LLC*, Nos. 1:21-CV-104 (MAD/DJS); 1:21-CV-106 (MAD/DJS); 1:21-CV-109 (MAD/DJS), 2022 U.S. Dist. LEXIS 219151, *4 (N.D.N.Y. Dec. 6,

2022) (D'Agostino, J.). The Court finds, based on the prevailing rates in this District, Plaintiff's counsel's experience, and its familiarity with this case, that an hourly rate of $250 is appropriate for Plaintiff's fee award.

Next turning to the reasonable hours expended, "'[t]he fee applicant . . . bears the burden of documenting the hours spent by counsel, and the reasonableness thereof.'" *Johnson*, 2019 U.S. Dist. LEXIS 193661, at *17 (quoting *Stevens v. Rite Aid Corp.*, No. 13-cv-783, 2016 U.S. Dist. LEXIS 159468, at *9, 2016 WL 6652774, at *4 (N.D.N.Y. July 6, 2016)). "In determining a reasonable fee, the district court 'should exclude . . . hours that were not "reasonably expended,"' including 'hours that are excessive, redundant, or otherwise unnecessary.'" *Osterweil*, 92 F. Supp. 3d at 28 (quoting *Hensley* [*v. Eckerhart*,] 461 U.S. [424,] 434 [(1983)] (citation omitted)).

To support its argument that the hours that Plaintiff's counsel expended were unreasonable or duplicative, Defendant merely points to the fact that her counsel worked on certain tasks on more than one calendar date, such as drafting Plaintiff's complaint on three different dates or responding to Defendant's motion for summary judgment on five different dates and in six different time entries. *See* Dkt. No. 83 at 24-25. However, as Plaintiff points out, when the Court considers the actual time billed for each of those tasks, as clearly identified in Plaintiff's counsel's contemporaneously-maintained time records, it does not appear that the hours that counsel expended were unreasonable or duplicative. *See* Dkt. No. 82-9 at 2-3. For example, although Plaintiff's counsel drafted Plaintiff's complaint on three different dates, the total amount of time expended was 2.4 hours, which is not excessive. *See id.* at 2. Similarly, although Plaintiff's counsel worked on her successful opposition to Defendant's motion for summary judgment in six different time entries, those entries totaled 19.8 hours, which is

reasonable for 25 pages of substantive briefing, drafting a statement of material facts, drafting two declarations, and attaching 18 exhibits. *See id.*; *see also* Dkt. No. 39. As Defendants have not raised any examples of *actual time billed* that is arguably extraneous or duplicative, the Court finds that Plaintiff's counsel expended reasonable hours in litigating this matter. Accordingly, the Court awards Plaintiff's requested attorney's fees at a rate of $250 per hour for 207.6 hours of work,[5] totaling $51,900, and a half rate of $125 per hour for 12.9 hours of travel time, totaling $1,612.50. Defendant also has not disputed Plaintiff's requested costs of $4,718.30, and the Court grants Plaintiff's request for those costs in its entirety. Thus, in sum, the Court awards Plaintiff a total of $58,230.80 in attorney's fees and costs.

### D. Amending the judgment

Plaintiff lastly requests that the Court amend the judgment to include the amounts it awards for economic damages, attorney's fees, and costs. *See* Dkt. No. 82-1 at 28. The Court grants Plaintiff's request and amends its judgment to include the total of Plaintiff's nominal damages, economic damages, attorney's fees, and costs.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion, *see* Dkt. No, 82, is **GRANTED** to the extent that she is awarded the following:

---

[5] This is the sum of the 189 hours Plaintiff requested in her initial memorandum and the 18.6 hours her counsel expended in preparing her reply brief.

(1) Backpay for Plaintiff's reduced income from November 8, 2017 until June 9, 2019;

(2) Pension equity of $4,000 per year from June 9, 2019 until August 4, 2023, which is the date judgment was entered;

(3) Front pay in the form of $4,000 per year, reduced to present value, accounting for Plaintiff's pension differential from August 4, 2023 until June 9, 2042; and

(4) $58,230.80 in attorney's fees and costs; and the Court further

**ORDERS** that the Clerk of the Court enter an Amended Judgment to reflect each of these awards.

**IT IS SO ORDERED.**

Dated:  December 8, 2023
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge